UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:25-CV-00039-HBB

JEFFREY B.[1]                                                                          PLAINTIFF

VS.

FRANK BISIGNANO
COMMISSIONER SOCIAL SECURITY[2]                                    DEFENDANT

## MEMORANDUM OPINION
## AND ORDER

## I.      BACKGROUND

Before the Court is the Complaint (DN 1) of Jeffrey B. ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   Both the Plaintiff and Defendant have filed a Fact and Law Summary (DN 12, 14).   For the reasons that follow, Plaintiff's challenges to the final decision of the Commissioner are without merit and the final decision of the Commissioner is **AFFIRMED**.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 8).   By Order entered May 19, 2025 (DN 9), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.   No such request was filed.

---

1 Pursuant to General Order 22-05, Plaintiff's name in this matter was shortened to first name and last initial.
2 Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted as the defendant in this suit.

## II.    FINDINGS OF FACT

On April 25, 2022, Plaintiff protectively filed an application for Supplemental Security Income (Tr. 11, 341, 345).  Plaintiff alleged that he became disabled on October 20, 2021, as a result of a bulging disc in his back; back pain; neck pain; fatty liver; migraines; hypertension; tachycardia; bilateral lower extremity swelling; ambulation problems; no grip in left hand; breathing problems upon exertion; bilateral hand swelling; vitamin D deficiency; low testosterone; anxiety; and depression (Tr. 11, 245, 253, 379).  The application was denied initially on September 21, 2022, and upon reconsideration on January 1, 2023 (Tr. 11, 244, 252).  On October 16, 2023, Plaintiff filed a written request for hearing (Tr. 11, 279).

On October 16, 2023, Administrative Law Judge Steven Collins ("ALJ") conducted a hearing in Bowling Green, Kentucky (Tr. 11, 196).  Plaintiff and his attorney, Mary Burchett Bower, participated and Plaintiff testified during the hearing (*Id.*).  Kenny Boaz, an impartial vocational expert, also testified during the hearing (*Id.*).

In a decision dated March 8, 2024, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 11-26).  At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since April 25, 2022, the application date (Tr. 13).  At the second step, the ALJ determined that Plaintiff has the following severe impairments: lumbar degenerative disc disease; neuropathy; chronic obstructive pulmonary disease ("COPD"); obesity; depression; and anxiety (*Id.*).  At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1, including Listing 1.15, 1.16, 3.02, 11.14, 12.04, and 12.06 (Tr. 15-17).

2

At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform less than the full range of light work as defined in 20 C.F.R. § 416.967(b) because certain exertional, postural, environmental, and mental restrictions (Tr. 17-18). Additionally, the ALJ determined that Plaintiff is unable to perform any past relevant work (Tr. 24).

The ALJ proceeded to the fifth step where he considered Plaintiff's RFC, age, education, and past work experience as well as testimony from the vocational expert (Tr. 25-26). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (*Id.*). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from April 25, 2022, the filing date of the application, through March 8, 2024, the date of the ALJ's decision (Tr. 26).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 337). The Appeals Council denied Plaintiff's request for review (Tr. 1-4).

### III.    CONCLUSIONS OF LAW

#### A.    Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993); *Wyatt v. Sec'y of Health & Hum. Servs.*, 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. *Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton*, 2 F.3d at 695 (quoting *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for

3

substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Cohen v. Sec'y of Health & Hum. Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton*, 2 F.3d at 695-96.

### B.    The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. § 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 1382c(a)(3)(A) (Title XVI); 20 C.F.R. § 416.905(a); *Barnhart v. Walton*, 535 U.S. 212, 214 (2002); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. § 416.920. In summary, the evaluation proceeds as follows:

1)      Is the claimant engaged in substantial gainful activity?

2)      Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3)      Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4)      Does the claimant have the RFC to return to his or her past relevant work?

5)      Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

20 C.F.R. § 416.920(a)(4)(i)-(v).   Here, the ALJ denied Plaintiff's claim at the fifth step.

**C.      Plaintiff's Second Step Challenge**

Plaintiff contends the ALJ failed to acknowledge his myofascial pain syndrome and determine whether it is a severe impairment (DN 12 PageID # 1598).   In support of his position, Plaintiff cites the June 16, July 11, and August 9, 2023, treatment notes of his pain management physician, Dr. Joshua Rock (*Id.*) (citing Tr. 1256, 1259-60, 1265).   Plaintiff points out that Dr. Rock's treatment note of August 9, 2023, indicates a lack of any pain relief from the trigger point injections administered on August 9, 2023 (*Id.*) (citing Tr. 1265).   Plaintiff argues a remand is "required for proper analysis of the severe impairment issues" (*Id.*).

Defendant begins by observing that the purported error is harmless as the ALJ indicated that he considered all of Plaintiff's medically determinable impairments, including those that were not severe, in assessing Plaintiff's RFC (DN 14 PageID # 1619) (citing Tr. 15, *Floyd v. Comm'r of Soc. Sec.*, No 23-2036, 2024 WL 3103757, at *2 (6th Cir. June 24, 2024).   Additionally, in assessing Plaintiff's RFC, the ALJ considered Dr. Rock's treatment records including those discussing treatment of Plaintiff's lumbar radiculopathy and myofascial pain syndrome with

epidural and trigger point injections (*Id.* at PageID # 1620) (citing Tr. 19-21, 1256, 1265, 1274). Further, Defendant points out that Plaintiff fails to cite evidence of greater limitations due to his diagnosis and treatment for myofascial pain syndrome (*Id.*) (citing *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008)).

At the second step in the sequential evaluation process a claimant must demonstrate he suffers from a "severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement . . ." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); Social Security Ruling 16-3p, 2017 WL 5180304, at *11 (Oct. 25, 2017); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam).[3]   According to the regulations, upon determining that a claimant has at least one severe impairment, the ALJ must continue with the remaining steps in the sequential evaluation process.  *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

Here, the ALJ found Plaintiff suffered from the following severe impairments: lumbar degenerative disc disease; neuropathy; chronic obstructive pulmonary disease; obesity; depression; and anxiety (Tr. 13).   The ALJ also identified Plaintiff's other medically determinable impairments and explained why he determined they are not severe (Tr. 14-15).   The ALJ did not, however, explicitly mention myofascial pain syndrome in his second step analysis (Tr. 13-15).

The ALJ continued with the remaining steps in the sequential evaluation process (Tr. 15-26).   Although the ALJ's RFC analysis does not explicitly mention myofascial pain syndrome, it

---

3 To satisfy the "severe" requirement the claimant must demonstrate the impairment or combination of impairments "significantly limit" his physical or mental ability to do "basic work activities."   20 C.F.R. §§ 404.1522(a), 416.922(a).   To satisfy the "medically determinable" requirement the claimant must present objective medical evidence (i.e., signs, symptoms, and laboratory findings) that demonstrates the existence of a physical or mental impairment.   20 C.F.R. §§ 404.1521, 416.921; Social Security Ruling 16-3p, 2017 WL 5180304, at *11 (Oct. 25, 2017).

does include a summary of the very treatment records at issue (Tr. 17-24) (citing Ex. 26F). Specifically, the ALJ discusses Dr. Rock's administration of trigger point injections, and that Plaintiff reported they did not help (Tr. 19-20) (citing Ex. 26F). Dr. Rock's treatment notes unequivocally indicate he administered the trigger point injections to address Plaintiff's myofascial pain syndrome (see Ex. 26F at Tr. 1256, 1259-60, 1265, 1274). Additionally, the ALJ considered Dr. Rock's findings on examination, including normal strength in the bilateral lower extremities and intact reflexes (Tr. 21) (citing Tr. 1256, 1265, 1274). Notably, the ALJ discussed Dr. Rock's pain management treatment in the context of addressing the larger issue of Plaintiff's history of conservative treatment of low back pain from degenerative disc disease. Consequently, the ALJ appears to have considered Plaintiff's myofascial pain syndrome in the context of assessing the physical RFC limitations imposed by his back condition.

Moreover, Plaintiff has not identified specific evidence in the record that purportedly supports greater limitations than those included in the ALJ's physical RFC determination (DN 12 PageID # 1598). As the ALJ could properly consider the limitations imposed by Plaintiff's medically determinable severe and non-severe impairments in determining whether he retained sufficient RFC to allow him to allow him to perform substantial gainful activity, the ALJ's purported failure to find the myofascial pain syndrome is "severe" could not constitute reversible error (Tr. 13-26). *Maziarz*, 837 F.2d at 244; *Mish v. Comm'r of Soc. Sec.*, No. 1:09-CV-753, 2011 WL 836750, at *1-2 (W.D. Mich. Mar. 4, 2011) (so long as an ALJ finds that other impairments are severe, continues with the sequential evaluation process, and considers all of a claimant's impairments in the remaining steps, the error is harmless). In sum, the ALJ's alleged omission is a harmless error.

7

D.    **Plaintiff's RFC Challenge**

1.    *Arguments of the Parties*

Plaintiff makes several claims regarding the ALJ's physical and mental RFC findings (DN 12 PageID # 1599-1603).    More specifically, Plaintiff takes issue with the ALJ indicating he found persuasive the physical functional opinions of the state agency medical consultants yet imposing slightly greater specific exertional (sit/stand option), postural (stooping, kneeling, crouching, crawling), environmental (exposure to vibration, hazards), and mental limitations in the RFC (*Id.* at PageID # 1600-01).    Plaintiff argues that the ALJ's decision lacks necessary rationale supporting the ALJ's inclusion of these specific limitations in the RFC (*Id.*) (citing 20 C.F.R. § 416.945 and Social Security Ruling 96-8p ("SSR 96-8p").    Relatedly, Plaintiff asserts the ALJ is not qualified to interpret in functional terms the raw medical data (MRI, EMG, x-rays) received after the state agency medical consultants rendered their opinions (*Id.* at PageID # 1601-02). Additionally, Plaintiff suggests that the ALJ failed to consider that the state agency medical consultants did not have the opportunity to consider much of the evidence of record at the time of decision (*Id.* at PageID # 1602).    Plaintiff accuses the ALJ of failing to appropriately consider the orthopedic referral (Tr. 1018), the neurological evaluation (Tr. 1317-29), the pain management referral (Tr. 1259-73, 1360-63), the physical therapy findings (Tr. 1037-56), the neurosurgical evaluation (Tr. 1387-92), Dr. Lessenberry's findings (Tr. 1058-59, 1369), and Dr. Sternberg's findings (Tr. 1249) (*Id.* at PageID # 1602-03).    Concerning the ALJ's mental limitations in the RFC, Plaintiff asserts that he failed to provide sufficient rationale in support of the specific limitations in the RFC finding (*Id.* at PageID # 1603).

Defendant responds that Plaintiff's interpretation of SSR 96-8p is not supported by Sixth Circuit case law (DN 14 PageID # 1622, 1624-25) (citing *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002). Next, Defendant asserts in finding Plaintiff had greater limitations that expressed by the State agency physicians, the ALJ reasonably considered the additional evidence submitted after their review (*Id.* at PageID # 1623). Further, Defendant suggests the ALJ did not interpret raw medical data, he instead reasonably relied on the reports prepared by medical professionals interpreting the raw medical data (*Id.*). Moreover, the ALJ is not required to discuss all the evidence in the record, and the failure to cite the specific evidence mentioned by Plaintiff does not mean it was not considered by the ALJ (*Id.* at PageID # 1624) (citing *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004)). Additionally, Defendant points out that the ALJ considered the very evidence Plaintiff claims he overlooked (*Id.*) (citing Tr. 19-20). Defendant posits that Plaintiff is requesting the Court reweigh the evidence in Plaintiff's favor which is not permissible (*Id.*) (citing *Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x 586, 588 (6th Cir. 2019)).

### 2.    *Applicable Law*

The RFC determination is the ALJ's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546(c), 416.945(a), 416.946(c). ALJs make this finding based on a consideration of medical source statements, prior administrative medical findings, and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c), 416.929, 416.945(a)(3), 416.946(c). Thus, in making the RFC determination ALJs must necessarily evaluate the persuasiveness of the medical

9

source statements and prior administrative medical findings in the record as well as assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a), 416.1520c, 416.1529(a).

The new regulations for evaluating medical opinions and prior administrative medical findings are applicable to Plaintiff's claim because he filed it after March 27, 2017. *See* 20 C.F.R. § 416.920c. The new regulations explicitly indicate "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),"[4] in the record, even if it comes from a treating medical source. 20 C.F.R. § 416.920c(a).[5] Instead, ALJs will now evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation. 20 C.F.R. § 416.920c(a) and (b). The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 416.920c(c)(1)-(5).[6] Of these five factors, the two most important are supportability and consistency. 20 C.F.R. § 416.920c(a) and (b)(2). Further, the regulation requires ALJs to explain how they considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. § 416.920c(b)(2). Notably, under the regulations ALJs "may, but are not required to, explain how" they considered the three other factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. § 416.920c(b)(2).

---

4 At the initial and reconsideration levels, state agency medical and psychological consultants review the evidence in the case record and make "administrative medical findings." 20 C.F.R. § 416.913a(a)(1). ALJs "must consider" the administrative medical findings of non-examining state agency medical or psychological consultants according to the new regulation. 20 C.F.R. § 416.913a(b)(1).

5 The language quoted above indicates that the new regulation has done away with the controlling weight rule in 20 C.F.R. § 416.927(c)(2).

6 In assessing the relationship with the client, consideration should be given to the following: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. § 416.920c(c)(3)(i)-(v).

### 3.     *Discussion*

At the initial and reconsideration levels non-examining state agency medical and psychological consultants reviewed the evidence of record (Tr. 245-51, 253-61). At the initial level the state agency medical consultant, Dr. Barry Stoler, found that Plaintiff's disorder of the skeletal spine is a severe impairment (Tr. 247). At the reconsideration level, the state agency medical consultant, Dr. Michael Greenburg, found that Plaintiff's disorder of the skeletal spine and disorder of the respiratory system are severe impairments (Tr. 256). The state agency psychological consultants at both the initial and reconsideration levels found that Plaintiff's anxiety and depression are non-severe impairments because he had a mild limitation in each of the four broad areas of mental functioning (Tr. 247, 256).[7]

At both the initial and reconsideration levels, Drs. Stoler and Greenberg found that Plaintiff has the physical RFC to performing a range of light work (Tr. 248-50, 254-59). More specifically, they determined that Plaintiff can occasionally lift and/or carry twenty pounds and frequently lift and/or carry ten pounds; stand and/or walk for a total of about six hours in an eight-hour workday; can sit for a total of about six hours in an eight-hour workday; can occasionally climb ladders/ropes/scaffolds; can frequently crouch and crawl; and needs to avoid even moderate exposure to hazards such as unprotected heights and moving machinery (Tr. 248-50, 254-59).

---

7 The determination whether a mental condition "significantly limits" a claimant's ability to do one or more basic work activities is based upon the degree of functional limitation in four broad functional areas that are known as the "paragraph B" criteria. 20 C.F.R. § 416.920a(c)(3); 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00E. They are: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 416.920a(c)(3). The four areas of mental functioning are evaluated on the following five-point rating scale: "None, mild, moderate, marked, and extreme." 20 C.F.R. § 416.920a(c)(4). If the four areas of mental functioning are rated as "none" or "mild," the agency generally concludes that the claimant's impairment is not "severe," unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. § 416.920a(d)(1).

The state agency psychological consultants did not make mental RFC findings at the initial or reconsideration levels (Tr. 250, 259).

At the hearing level, a substantial amount of new medical evidence was added to the record (Tr. 1014-1561, Ex. Nos. 16F-43F).[8]   After conducting the hearing, the ALJ considered all the evidence of record and made findings concerning Plaintiff's physical and mental impairments (Tr. 13-24).   At step two the ALJ found that Plaintiff has the following severe physical impairments: lumbar degenerative disc disease, neuropathy, COPD, and obesity (Tr. 13).   The ALJ also found that Plaintiff's depression and anxiety are severe impairments (*Id.*).

At step three, the ALJ relied on both the evidence considered by the state agency psychological consultants and the evidence received at the hearing level when he made findings regarding the degree of limitation in each of the four broad areas of mental functioning (Tr. 16-17) (citing Exs. 5E, 13E, 7F, 13F-15F, 19F, 21F-22F, 24F, 25F, 27F, 30F, 33F, 39F).   The ALJ determined that Plaintiff has a mild limitation in understanding, remembering or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing oneself (Tr. 16-17).   The ALJ also indicated that his findings concerning the degree of limitation in each of the four broad areas of mental functioning are reflected in his mental RFC assessment (Tr. 17).

At step four, the ALJ made a general finding that Plaintiff has the RFC to perform less than the full range of light work as defined in 20 C.F.R. § 416.967(b) (Tr. 17-18).   This is consistent with the ALJ's determination that the state agency medical consultants' physical assessment is

---

8 Plaintiff indicates that Ex. 5F (Tr. 708-28) and Ex. 12F (Tr. 839-42) were also added at the hearing level (DN 12 PageID # 1602).   The ALJ considered these two exhibits in making his findings (Tr. 16-17, 20).

persuasive (Tr. 24).   But the ALJ also implicitly recognized the impact of evidence received at the hearing level when he explained that he "afforded slightly greater specific restrictions" in his RFC assessment (*Id.*).   For the reader's benefit, the Court has italicized those slightly greater specific restrictions included in the ALJ's RFC assessment: Plaintiff can lift/carry up to twenty pounds occasionally and up to ten pounds frequently; he can sit for 6 hours in an 8-hour workday; he can stand and/or walk six hours in an eight-hour workday; he can *occasionally climb ramps and stairs*; he should *never climb ladders, ropes, or scaffolds*; he *needs an option to alternate from sitting to standing or standing to sitting after no sooner than thirty minutes, needing one to two minutes to change while on task*; he can *occasionally stoop, kneel, crouch, and crawl*; he must *avoid concentrated exposure to pulmonary irritants (fumes, odors, dusts, gases, poor ventilation) and vibration*; he must *avoid all exposure to dangerous machinery and unprotected heights*; he *can understand, remember, and carry out simple, routine tasks, involving simple work-related decisions and few, if any workplace changes; he can perform tasks over two hour segments across an 8-hour workday; and he can have occasional contact with supervisors, coworkers and the public* (Tr. 17-18).   Thus, there is no merit to Plaintiff's suggestion that the ALJ failed to consider that the state agency medical consultants did not have the opportunity to consider much of the evidence of record at the time of decision (DN 12 PageID # 1602).

The Court will now address Plaintiff's contention that the ALJ's decision lacks the necessary rationale supporting his inclusion of the above italicized limitations in the RFC determination (*Id.* at PageID # 1600-01).   The ALJ's discussion that elucidates the basis for his RFC determinations begins with a through and accurate summary of Plaintiff's testimony regarding the intensity, persistence, and limiting effects of the symptoms caused by his physical

and mental impairments (Tr. 18-19).   Notably, the ALJ indicated there are several reasons he did

not find Plaintiff's statements entirely consistent with the medical evidence and other evidence in

the record (Tr. 19).   First, he indicated the evidence of record documented that prior to and during

the period under consideration Plaintiff received conservative treatment for low back pain from

degenerative disc disease (*Id.*).   The ALJ pointed out:

> The record documents he was prescribed narcotic pain medication by a primary
> care provider.   He was referred to an orthopedic doctor for evaluation in December
> 2022.   He was referred to physical therapy but was discharged for noncompliance.
> Following MRI imaging the claimant was offered injections and saw a pain
> management provider where he received several injections (epidural injections and
> trigger point injections).   The pain management provider noted the claimant was
> not a good candidate for long-term opioid therapy based on his history and declined
> to take over or prescribe his medications.   The claimant returned to the orthopedic
> doctor and reported injections did not help.   The doctor indicated the claimant
> needed the opinion of a neurosurgeon.   Treating notes from November 2023
> indicate the claimant was no longer receiving pain medication from his primary
> care provider because he had alcohol in his system.   The pain management
> provider again declined to prescribe pain medication and indicated he had nothing
> left to offer the claimant outside of specific injections if requested from
> neurosurgery.   The neurologist indicated that there was a disparity between the
> MRI findings and the claimant's clinical presentation.   The pain management
> provider similarly observed the claimant's symptomology appeared to be in excess
> of his radiographic findings.  (Ex. 1F-2F, 4F, 15F-18F, 26F-27F, 36F-37F, 39F,
> 42F)

(Tr. 19-20).

Next, the ALJ noted although Plaintiff reported numbness in his feet and legs during a

December 2021 urgent care visit, several years passed before he had a formal evaluation (Tr. 20).

The ALJ reported:

> In July 2023, the claimant was referred to a neurologist for evaluation of
> neuropathy.   In that evaluation, the claimant had multiple complaints, but his exam
> was unremarkable.   He was referred for workup including an MRI of the brain for
> his complaints of confusion.   The doctor noted the claimant reported he "drinks
> lots of alcohol" as well.   The doctor noted they may also consider an EMG and
> nerve conduction study.   This study was conducted in December 2023.   It noted

no electrophysiologic evidence of peripheral nerve entrapment, nerve root pathology, or myopathic processes. Findings were consistent with a sensorimotor polyneuropathy that was mild to moderate in severity and demyelinating in type. (Ex. 25F page 10; Ex. 30F, 31F, 39F, 43F)

(*Id.*). The ALJ indicated while Plaintiff's mild to moderate neuropathy is established by testing and found to be severe at step two, the record did not demonstrate that it results in greater restriction than assessed in the RFC which affords Plaintiff "the option to change positions every 30 minutes and eliminates exposure to hazards and climbing of ladders, ropes, or scaffolds" (*Id.*). Thus, contrary to Plaintiff's assertion, the ALJ did provide sufficient rationale in support of the italicized sit/stand option, postural limitations, and environmental hazards in the RFC.

Next, the ALJ recognized Plaintiff's complaints of chronic shortness of breath (*Id.*). The ALJ commented:

Treating notes from May 2022 document the claimant reported he smokes a pack of cigarettes a week. The notes indicate he had still not gotten his chest x-ray or pulmonary function study done. Chest x-ray from June 2022 was normal. Pulmonary function study from June 2022 noted spirometry was within normal limits. Lung volumes were within normal limits and diffusion capacity was normal. Spirometry from October 2022 showed no obstruction and was largely unchanged from one a month earlier. There was a mild decrease in FVC which can be suggestive of a restrictive lung defect and a full pulmonary function test was recommended to evaluate. Lab work has been within normal limits. Chest CT was normal. Pulmonary function testing in November 2022 noted no obstruction on spirometry; normal lung volumes; and mildly reduced diffusion capacity. Exams with a pulmonologist and other providers have generally been unremarkable (normal breath sounds, normal pulmonary effort, no wheezing or rhonchi). Chest imaging from July 2023 showed no active disease. Despite his complaints of shortness of breath, treating notes document he was "a current smoker, not motivated to quit at this time". The pulmonologist indicated the claimant's reported shortness of breath was multifactorial and that obesity, and physical deconditioning played a role. The claimant's treatment has been routine and consisted of medication management (inhalers, nasal spray, allergy medication). The claimant reported he does not use his inhaler every day. (Ex. 6F page 2-6; Ex. 12F; Ex. 13F page 8-10, 13-17, 20-21; Ex. 20F, 22F, 25F; Ex. 25F page 2; Ex. 38F page 12-15)

15

(*Id.*).   The ALJ recognized although Plaintiff's COPD is a severe impairment, the record merely documents routine treatment and does not demonstrate Plaintiff has experienced exacerbations during the relevant time frame (*Id.*).   The ALJ indicated that he nevertheless accounted for this impairment in the RFC by limiting Plaintiff to no concentrated exposure to pulmonary irritants (*Id.*).   Thus, the ALJ provided sufficient rationale for the italicized environmental limitations.

Next, the ALJ acknowledged that Plaintiff's degenerative disc disease is established by imaging of record (Tr. 21).   The ALJ did, however, point out that both a neurologist and pain management doctor found that imaging did not appear to substantiate Plaintiff's claimed symptoms (*Id.*).   The ALJ then summarized the imaging reports as follows:

> MRI of the lumbar spine from February 2023 was described as showing desiccation at the L5-S1 disc space with some disc protrusion at L5-S1 showing some foraminal stenosis.   There was no destructive change.   X-ray of the lumbar spine from November 2023 noted severe L5-S1 degenerative spondylosis with disc space narrowing and degenerative vacuum disc phenomena.   (Ex. 18F page 2, 5; Ex. 38F page 1; Ex. 39F-40F, 42F)

(*Id.*).   The ALJ then provided the following explanation concerning why he did not find Plaintiff's statements entirely consistent with the medical evidence and other evidence of record:

> The objective exams of record do not support the claimant's allegations regarding the severity of his symptoms and limitations.   Exams with medical providers during the period under consideration describe the claimant as in no acute distress. He has normal appearance and is not ill appearing.   He is well appearing, well nourished, and well developed.   Lungs are typically clear to auscultation.   He has normal pulmonary effort and is not in respiratory distress.   He has normal breath sounds.   The claimant has normal heart rate and rhythm with no murmur. Peripheral pulses are normal.   Cranial nerves II-XII are grossly intact.   The claimant generally has no clubbing, cyanosis, or edema of the extremities.   Other than tenderness and reported pain with range of motion in the lumbar spine, exams were generally unremarkable.   (Ex. 6F page 3, 5-6; Ex. 13F page 15-16; Ex. 15F page 46, 50, 55, 59, 65, 90, 96; Ex. 19F page 9, 17-18, 31-32, 42-43, 47-48, 61-62; Ex. 20F page 10, 16; Ex. 22F page 8, 21; Ex. 25F page 6-7; Ex. 27F page 6-7, 11-12, 22, 26, 33; Ex. 28F, 32F; Ex. 33F page 6)   Similarly, exams with specialists during the period under consideration do not support the claimant's extreme

16

allegations. While Abnormalities are noted in some exams, the level of impairment alleged by the claimant is not well supported by the exam findings. Initial exam with an orthopedic doctor in December 2022 described the claimant as well developed, well nourished, and oriented. He had good vascular flow. There was absence of the ankle jerk reflex on the right compared to the left where he had 2+ reflex at the ankle. He had decreased sensation laterally in the right leg with increased symptoms with straight leg raise. Subsequent exams again noted absence of the ankle jerk reflex on the right but no foot drop. The claimant had good vascular flow and good motor control. There was no laxity, atrophy, malalignment or node enlargement. (Ex. 16F page 3, 5; Ex. 18F, 37F) The claimant had limited physical therapy in December 2022 and January 2023. Those visits noted tenderness to palpation of the lumbar spine, antalgic gait, and reduced sensation in the right foot. (Ex. 17F) Pain management exams from 2023 noted reduced sensation in the toes but not in a dermatomal distribution. The claimant had normal strength in the bilateral lower extremities and intact reflexes. (Ex. 26F page 3, 12, 21) Neurology exam observed the claimant comfortable on room air and in no acute respiratory distress. The claimant had no tenderness to palpation on the spine or paraspinal muscles. Cranial nerves were intact. The claimant had normal gait. He had normal strength throughout. Coordination was intact despite the claimant reported his coordination was "messed up". Sensation was intact in all four extremities. Muscle tone and bulk appeared normal. A follow-up exam from November 2023 noted normal gait. Sensation was reduced but he had normal strength in the extremities. The neurologist indicated that there was a disparity between the MRI findings and the claimant's clinical presentation. (Ex. 30F page 3-4; Ex. 39F)

(*Id.*). Despite the equivocal nature of the medical evidence, the ALJ apparently gave Plaintiff the benefit of the doubt and included the above italicized postural (stooping, kneeling, crouching, crawling) and environmental restrictions (vibration, exposure to dangerous machinery, and exposure to unprotected heights) in Plaintiff's RFC. Thus, the ALJ provided sufficient rationale for these specific italicized limitations

Next, the ALJ observed that Plaintiff was six feet tall and weighed 280 to 285 pounds which resulted in a BMI exceeding 30 (Tr. 22) (citing Section F, generally). The ALJ then provided the following analysis concerning Plaintiff's severe impairment obesity:

SSR 19-2p requires consideration of obesity in determining whether a claimant has medically determinable impairments that are severe, whether those impairments

> meet or equal any listing, and finally in determining the residual functional
> capacity. As with all other impairments, obesity is established by objective
> medical evidence (i.e., signs, laboratory findings, or both) from an acceptable
> medical source. Signs and laboratory findings that may establish obesity include
> measured height and weight, measured waist size, and body mass index (BMI)
> measurements over time. Moreover, obesity may or may not have an adverse
> impact upon co-existing impairments. For example, obesity may affect the
> cardiovascular and respiratory systems, making it harder for the chest and lungs to
> expand and imposing a greater burden upon the heart. Someone with obesity and
> arthritis affecting a weight-bearing joint may have more pain and limitation than
> might be expected from arthritis alone; they may have lesser ability to tolerate heat,
> humidity, or hazards; or they may have excess adipose fat in the hands and fingers
> causing difficulty with manipulation. In addition, obesity may contribute to
> fatigue and limit an individual's ability to sustain activity on a regular and
> continuing basis during an eight-hour day, five-day week or equivalent schedule.

(*Id.*). The ALJ then indicated he had taken the above considerations into account when making

his determinations at steps two through five in the sequential evaluation process (*Id.*). Thus, the

ALJ again provided sufficient rationale for the above italicized postural (stooping, kneeling,

crouching, crawling) and environmental restrictions (vibration, exposure to dangerous machinery,

and exposure to unprotected heights) in Plaintiff's RFC.

Next, the ALJ addressed Plaintiff's mental impairments (*Id.*). Specifically, the ALJ

stated:

> The claimant has reported improvement with conservative mental health treatment.
> The record documents a history of medication management of depression with
> anxiety. (Ex. 1F-4F) In April 2022, the claimant had an intake assessment with
> a mental health provider. The claimant reported he needed to see a psychiatrist to
> resume his benzodiazepine that had been stopped after he went to jail for 15 months.
> He was referred to outpatient psychotherapy with a referral for a psychiatric
> evaluation. The claimant then saw a family practice nurse practitioner for
> medication in July 2022. In his August 2022 follow-up visit, he reported he had
> been sleeping better. He reported better mood and reported he was able to be more
> productive. In his September 2022 follow-up visit he reported stable mood with
> the use of medication and reported things were going well overall. He reported
> good sleep and appetite. He has generally continued to report moods are better
> than they were prior to treatment and better ability to deal with stressors. In June
> 2023 he reported the meds were working well and he denied side effects. (Ex. 7F,

18

14F-15F, 19F, 21F, 24F)

> As to the nature and severity of the claimant's mental impairments, the notations in the treatment record concerning the claimant's mental impairments do not indicate that the psychological base symptoms would impose broader limitation than those assessed in the residual functional capacity above. Exam from the claimant's initial mental health intake assessment observed the claimant had appropriate appearance. He was oriented. He was cooperative and had appropriate eye contact. He was guarded and vague in his interview but had normal speech. The claimant had anxious and depressed mood with anxious and blunted affect. Perception was normal. He had impaired short term memory. He had moderate insight and variable judgment. Thought processes were logical and linear. Thought content was appropriate. Subsequent exam was unremarkable. The claimant was cooperative with appropriate eye contact, behavior, and appearance. He had normal speech. He had euthymic mood and appropriate affect. He had logical and linear thought processes and appropriate thought content. (Ex. 7F page 11-12, 16-17, 21-22) The claimant saw a nurse practitioner with a family practice for an evaluation in July 2022. She observed he was sad looking and anxious with rapid speech. He had appropriate affect and associations were intact and logical. Thought content appeared appropriate. He had normal insight and intact judgment. Although he had poor eye contact, there were no signs of attentional difficulties. Subsequent exams with this provider observed no serious mental status abnormalities. His appearance, dress, and grooming were unremarkable. He had neither depressed nor elevated mood and mood was described as euthymic. There were no signs of anxiety. Speech was normal. Behavior was appropriate. He is observed to be relaxed, attentive, communicative, well groomed, and well dressed. Associations were intact. Thinking was logical. Thought content was appropriate. There were no signs of cognitive difficulty. Memory was intact for recent and remote events. He had normal attention span. Judgment and insight appeared intact. (Ex. 14F page 7, 10, 12, 14; Ex. 21F page 1, 3, 5, 7-8, 11, 13, 15-16; Ex. 24F) Exams with medical providers describe him as alert and oriented with normal behavior. There are occasional notations of anxious mood, but other office visits observed normal mood. He has normal judgment. He has normal grooming. Neurology exams noted the claimant was alert, oriented, and awake. His language functions were normal. He had normal mood and affect. He had normal fund of knowledge. He had normal cognition. (Ex. 13F page 16; Ex. 15F page 41-42, 46; Ex. 19F page 9, 17-18, 31-32, 42-43, 47-48, 61-62; Ex. 22F page 8, 21; Ex. 25F page 6-7; Ex. 27F page 6-7, 11-12, 22, 26, 33; Ex. 30F page 3-4; Ex. 33F page 6; Ex. 39F)

(Tr. 22-23). Considering the underwhelming nature of the medical evidence concerning

Plaintiff's mental impairments, the ALJ apparently gave him the benefit of the doubt and included

19

the above-mentioned mental restrictions in Plaintiff's RFC (Tr. 18). Thus, the ALJ again provided sufficient rationale for the above italicized mental impairments in Plaintiff's RFC.

As mentioned above, the ALJ determined that the general physical functional finding of Drs. Stoler and Greenberg is persuasive (Tr. 24). The ALJ provided the following explanation:

> While the undersigned has afforded slightly greater specific restrictions, the general finding that the claimant can perform less than the full range of light work is persuasive. This is well supported by the findings cited in the assessment including exam findings from several treatment providers during the period under consideration. It is also consistent with the other evidence of record including the conservative treatment received, the imaging and testing (pulmonary function test, EMG/nerve conduction study) described herein, and the exams across multiple providers. These exams generally observe normal gait, normal strength, normal coordination, normal breath sounds, and intact neurovascular functioning.

(Tr. 24). When the above explanation is considered in conjunction with the ALJ's discussion of the evidence in the record, the Court concludes that the ALJ's persuasiveness finding is supported by substantial evidence in the record and comports with applicable law.

Additionally, for the reasons set forth above, the Court concludes that the ALJ's decision provides the necessary rationale supporting inclusion of the above italicized specific limitations in the RFC. *See* SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."). Further, the ALJ's RFC assessment complied with SSR 96-8p because the ALJ considered the limiting effects of all of Plaintiff's impairments, even those that are not severe, and described how the evidence supported his RFC findings (Tr. 18-24). *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 729 (6th Cir. 2013); *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547-48 (6th Cir. 2002).

Moreover, there is no merit to Plaintiff's claim that the ALJ impermissibly interpreted in functional terms the raw medical data received after the non-examining state agency physicians rendered their functional assessments.    In reaching this conclusion, the Court notes that the Sixth Circuit has explained the regulations require ALJs to evaluate the medical evidence and the claimant's testimony to make an assessment of the claimant's RFC.    *Rudd*, 531 F. App'x at 726 (citing 20 C.F.R. § 416.945(a)(3); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)).    Additionally, the ALJ did not actually interpret raw medical data.    Rather, the ALJ relied on medical and psychological reports interpreting the raw medical data (Tr. 19-23).    *See Rudd*, 531 F. App'x at 727.    Additionally, the ALJ determined that the state medical consultants' general physical assessment was persuasive, and he noted that the state agency psychological consultants found no severe mental impairments.    But the ALJ appropriately considered the subsequently received evidence and appropriately gave Plaintiff the benefit of the doubt by affording "slightly greater specific restrictions" in the physical RFC findings and in making both the mental severity and mental RFC findings. (*Id.*) (*see Alisha B. v. O'Malley*, No. 3:23-CV-00495-CHB, 2024 WL 4481835, at *17 (W.D. Ky. Aug. 6, 2024), *report and recommendation adopted*, No. 3:23-CV-495-CHB, 2024 WL 4274876 (W.D. Ky. Sept. 24, 2024) ("An ALJ does not inappropriately substitute his judgment for a physician's opinion by providing a more restrictive RFC than what a State agency physician opined."); *Christina K. v. O'Malley*, No. 1:23-CV-00043-HBB, 2024 WL 270193, at *6 (W.D. Ky. Jan. 24, 2024) (finding that the ALJ "did not inappropriately play doctor but instead weighed the evidence," and in some areas of the RFC "gave Plaintiff the benefit of the doubt by deciding to impose slightly greater limits").    Consequently, the ALJ properly evaluated

the evidence of Plaintiff's physical and mental conditions received at the hearing level without the assistance of a medical expert.  *See Rudd*, 531 F. App'x at 726-27.

The Court moves next to Plaintiff's accusation that the ALJ failed to consider the orthopedic referral (Tr. 1018), the neurological evaluation (Tr. 1317-29), the pain management referral (Tr. 1259-73, 1360-63), the physical therapy findings (Tr. 1037-56), the neurosurgical evaluation (Tr. 1387-92), Dr. Lessenberry's findings (Tr. 1058-59, 1369), and Dr. Sternberg's findings (Tr. 1249) (*Id.* at PageID # 1602-03).   The ALJ was not required to discuss all the evidence submitted, and if he failed to cite the specific evidence cited by Plaintiff it would not mean that the evidence was not considered by the ALJ.  *See Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004).   Notwithstanding, the ALJ's decision reveals that he considered the very evidence Plaintiff claims he overlooked (Tr. 19-23).   For the above reasons, the Court concludes there is no merit to Plaintiff's challenges to the ALJ's RFC findings.

## IV.    CONCLUSION

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion . . ."  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (cleaned up).   Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ.   42 U.S.C. § 405(g). Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law.  *Id.*   After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law.   Therefore, Plaintiff is not entitled to relief with regard to his challenge.

22

## V.    ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

September 19, 2025

*H. Brent Brennenstuhl*

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies:        Counsel

23